IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRETT W. BARKLEY,

    Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

Civil No. 05-6094-AA
OPINION AND ORDER

---

Mark Manning
Cram, Harder, Wells & Baron, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorney for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Neil Evans
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Terrye Shea
Special Assistant U.S. Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Judge:

    Claimant, Brett Barkley, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g),1383(c)(3), to

obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act. Id. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

**PROCEDURAL BACKGROUND**

Plaintiff protectively filed his application for DIB and SSI benefits on January 8, 2002. Tr. 28, 81-83, 627-30. He alleged an inability to work beginning May 1, 2000, due to severe chronic neck and hip pain; absence of vision in his left eye; severe depression and anxiety; and complete memory loss and disorientation that rendered him unable to lift, drive "semis," interact personally and complete even simple tasks. Tr. 103. His applications were denied initially, tr. 63-74, and upon reconsideration. Tr. 631-40. On May 20, 2004, after a hearing, the Administrative Law Judge (ALJ) ruled that plaintiff was not disabled. Tr. 25-38. The Appeals Council, after considering additional records presented by plaintiff, found that the new evidence did not provide a basis for overturning the ALJ's decision, and therefore, denied plaintiff's request for review. Tr. 11-13, 641-708. The ALJ's decision thus became the final agency decision. See 20 C.F.R. §§ 404.981, 416.1481, 422.210 (2005).

**STATEMENT OF THE FACTS**

Born in 1968, plaintiff was 32 years old at his alleged onset date and 36 years old at the time of the hearing. Tr. 81,

2   - OPINION AND ORDER

714. Plaintiff has a high school education including a GED, some college, and graduated from truck driving school. Tr. 109. Plaintiff has past work experience as a truck driver, chef, delivery driver, deck hand, fish plant worker, grinder and carpet cleaner. Tr. 29.

After the ALJ's decision, on July 27, 2004, plaintiff submitted a two-page, "check the box" type report from Dr. William Moshofsky, dated June 17, 2004; and 2004 records from Sacred Heart Medical Center to the Appeals Council for review as additional evidence. Tr. 641-42, 643-708.

**STANDARD OF REVIEW**

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous

3   - OPINION AND ORDER

period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) &

4   - OPINION AND ORDER

(f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**DISCUSSION**

Based on the 5-Step Sequential Process outlined above, the ALJ found at Step One that plaintiff was not engaged in "substantial gainful activity" since his alleged onset date of disability. At Step Two, the ALJ found that plaintiff had "severe" impairments. Findings by the ALJ at Steps One and Two are not in dispute. At Step Three, the ALJ found that these medically determinable impairments do not meet or equal one of the listed impairments. This Finding is in dispute, as is the ALJ's determination of plaintiff's residual functional capacity. See 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. At Step Four, the ALJ found that plaintiff was not able to perform past relevant work, however, the ALJ determined that plaintiff retained the residual functional capacity to perform a range of light exertion work (which includes the ability to perform sedentary work); but could not perform "detailed and complex jobs or address public service." Tr. 35. This Finding is in dispute. Finally, at Step Five, based on the testimony of the vocational expert, the ALJ held that plaintiff was capable of performing other work that exists in the national economy. Tr. 37-38. This Finding is also in dispute.

Plaintiff alleges only that the ALJ erred by failing to reject the opinion of plaintiff's treating physician, Dr. Moshofsky. Dr. Moshofsky's opinion was contained in a "check-the-

5    - OPINION AND ORDER

box" letter dated June 17, 2004, submitted by plaintiff to the Appeals Council after the ALJ's decision. Tr. 641-42. Plaintiff also submitted records dated 2004 from the Sacred Heart Medical Center. Tr. 643-708. The Appeals Council reviewed the record including the additional evidence submitted by plaintiff and concluded that "this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. 11-12. I agree.

First, I agree with plaintiff that the new evidence submitted to the Appeals Council was made part of the administrative record and it is therefore proper for this court to consider the substance of that evidence. Dr. Moshofsky's letter dated June 17, 2004, submitted to the Appeals Council, stated in relevant part:

> 1. What are the diagnoses?
> Depression. Aneurysm repair, neck injury, tobacco dependent.
>
> 2. What are the objective medical findings upon which the diagnoses are based?
> x-rays, specialty evaluations.
>
> 3. What are the symptoms?
> chronic pain, neck and head.
>
> 4. Are the conditions capable of causing these symptoms?
> Yes.
>
> 5. In your opinion based on the above definition [of sedentary work], would [plaintiff] be capable of a full range of sedentary work?
> Yes.
> Comments: He is only intermittently functional from an emotional standpoint.
>
> 6. Is [plaintiff] unable to sustain work activity on a full-time basis in the sedentary category due to the exacerbation of his medical condition?
> Unable to sustain sedentary work.

6 - OPINION AND ORDER

Tr. 641-42.

I agree with the Appeals Council and do not find that this "check-the-box" form "provides a basis for changing the Administrative Law Judge's decision." Tr. 12. Dr. Moshofsky reported symptoms, however, he failed to set out any objective findings in his report instead referring only generally to "x-rays and specialty evaluations" in support of the diagnoses therein. Further, Dr. Moshofsky opined that plaintiff would, in fact, be capable of a full range of sedentary work; next that plaintiff was only intermittently functional from an emotional standpoint; and finally, that he would be unable to sustain sedentary work. I find that this report is not internally consistent. I also find that it is not based on objective findings nor does it cite to any specific "x-ray" evidence or "specialty evaluations" to support the diagnoses (nor has this court been able to locate such in the record). This form does not support findings of greater functional limitations than those assessed by the ALJ for any significant period of time.

Regarding the remainder of the new evidence submitted by plaintiff to the Appeals Council, that evidence consists of plaintiff's records from 2004 from Sacred Heart Medical Center. Tr. 643-708. The medical experts in those records consistently opine that plaintiff is malingering, inventing symptoms for secondary gain, and drug seeking. Specifically, the treating physicians at Sacred Heart opined the following: Plaintiff's Diagnosis: "malingering," tr. 657; and again, plaintiff's "Diagnosis: probable malingering," tr. 658. Other physicians noted that plaintiff's "behavior" is "obviously non-physiologic,

7   - OPINION AND ORDER

not neurologic in origin." Tr. 646. Another physician's note reads: "clearly no indication for Internal Medicine involvement in this patient's care whatsoever at this time. I don't believe there is a bonafide neurologic component to anything that is going on here." Tr. 647. Another chart note reads:

> I did a lab work up here including ordering a toxicology screen because in the past there has been secondary gain to his complaints; either he tries to get admitted for a place to stay or he gets pain medicine. [Plaintiff's] toxicology screen was positive for amphetamines and pot; Because of the patients' persistent symptoms of left-sided weakness, although somewhat inconsistent in exact presentation, and somewhat suspicious as far as whether this is malingering or not, he does have a history of a prior aneurysm and I went ahead and got a CT of his head which came back negative. At that point, I got his toxicology screen back and confronted him in the fact that I thought he was malingering and at that point he got quite agitated and distracted such that his left-sided weakness completely resolved. He got mad and demanded a repeat toxicology screen saying that [the first screen] was erroneous. I agreed to do this but pointed out that he indeed was moving his left side at that point and that any neurological deficits were resolved. I went ahead and discharged him. . . indeed, his repeat urine screen, with a new specimen, was also positive for amphetamines.

Tr. 650.

Finally, another chart note indicates: "Diagnosis on Admission: 1. Adjustment disorder with depressed mood, secondary to no housing; 2. marijuana and opioid [sic] dependence; and 3. Most likely malingered psychotic and delusional symptoms for the purpose of secondary gain." Tr. 663.

The examples cited above by no means exhaust the evidence contained in the 64 pages of records detailing various physician's determinations regarding plaintiff's malingering and

8 - OPINION AND ORDER

substance abuse. Moreover, I note that plaintiff fails to address the issues of malingering and substance abuse in either his initial Memorandum or Reply Memorandum. These treatment records weigh against plaintiff's allegations of disability and far outweigh Dr. Moshofsky's "check-the-box" opinion, submitted at the same time. Finally, I find that the record before the ALJ was replete with evidence relating to plaintiff's emotional and/or mental health. The ALJ specifically and thoroughly considered voluminous records relating to plaintiff's mental health. Tr. 25-38. Moreover, the ALJ requested the testimony and expertise of licensed clinical psychologist at the hearing. Tr. 709-10, 762-68.

I find that the ALJ adequately considered and properly rejected or accepted all relevant evidence, including plaintiff's testimony (which he found not credible) and the medical evidence. Tr. 28-38. This court considered as part of the administrative record plaintiff's additional medical evidence that was initially submitted to and considered by the Appeals Council. I find no basis to overturn the ALJ's decision and find the decision is based on proper legal standards and the findings are supported by substantial evidence in the record.

///
///
///
///
///
///
///

9    - OPINION AND ORDER

**CONCLUSION**

The Commissioner's decision is based on substantial evidence, and is therefore, affirmed. This case is dismissed. IT IS SO ORDERED.

Dated this  14  day of February 2006.


                                    /s/ Ann Aiken
                                    Ann Aiken
                                    United States District Judge

10   - OPINION AND ORDER